IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WBI ENERGY TRANSMISSION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COLONY INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br> Defendants. | CV 12–110–M–DWM <br><br><br> ORDER |

## INTRODUCTION

Plaintiff WBI Energy Transmission, Inc. ("WBI") initiated this declaratory judgment action against Defendants Colony Insurance Company ("Colony") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeking a declaration that WBI is covered by insurance policies issued by Colony and National Union and that Colony and National Union have a duty to defend and indemnify WBI in a lawsuit filed against WBI in the Montana Seventh Judicial District Court. (Amended Complaint, Doc. 41.) Now before the Court are the parties' respective motions for summary judgment. (Docs. 60, 69, 77, 88.) The

Court has jurisdiction under 28 U.S.C. § 1332(a)(1).  WBI's motions for partial summary judgment are granted, and Colony's and National Union's motions for summary judgment are denied.

## BACKGROUND

Sometime near August 19, 2008, WBI entered into a Construction Agreement with Pro Pipe Services, Inc. ("Pro Pipe") to replace a high-pressure, natural gas pipeline in Richland County, Montana ("the Project").  (WBI SUF, Doc. 71 at 2; Construction Agreement, Doc. 71-1.)  To complete the Project, Pro Pipe subcontracted with Underground Boring Specialties, Inc. ("Underground Boring").  (Doc. 71 at 5; Colony SUF, Doc. 63 at 3.)

Under the Construction Agreement, Pro Pipe was required to maintain insurance coverage to protect WBI against liability for damages arising out of the work provided for under the Construction Agreement.  (Doc. 71 at 3; Doc. 71-1 at 16.)  To satisfy this requirement, Pro Pipe procured a commercial general liability insurance policy through Colony with Policy Number GL120867 ("the Colony Policy") and a commercial excess/umbrella liability insurance policy through National Union with Policy Number BE2595633 ("the National Union Policy").  (Doc. 71 at 4; Certificate of Liability Insurance, Doc. 63-4 at 1.)

Around November 10, 2008, an employee of Pro Pipe, Dave Shanks

("Shanks"), was operating a backhoe on the Project site when the backhoe bucket accidentally struck an active, natural gas pipeline, which caused the pipeline to rupture. (Doc. 71 at 5.) The rupture allegedly caused a blast wave that resulted in injuries to Shanks. (*Id.*) Shanks filed a personal injury lawsuit against WBI and Underground Boring in state court ("the underlying lawsuit"). (*Id.*; Underlying Complaint, Doc. 71-3.) Shanks alleged that a cause of his injuries was the acts and omissions of both WBI, as the pipeline owner and operator, and Underground Boring, as the excavator responsible for the location of the pipeline entrance and exit pit and drilling the underground borehole for the Project. (Doc. 71-3.)

In a letter dated April 13, 2012, WBI tendered Shanks's claim to Pro Pipe and its insurers, Colony and National Union, for defense and indemnity of WBI, insisting that WBI is an "additional insured" under both Policies and that Shanks's claim is covered by certain provisions of the Construction Agreement and the Policies. (Doc. 71 at 7; WBI Tender, Doc. 63-5.) In a letter dated, April 20, 2012, Colony denied any obligation to defend or indemnify WBI in the underlying lawsuit. (Doc. 71 at 7; Colony Denial, Doc. 63-6.) National Union did not respond to WBI's tender of defense and indemnity. (Doc. 41 at 6.) WBI began defending the underlying lawsuit and on June 26, 2012, filed the instant lawsuit against Colony and National Union seeking, *inter alia*, a declaration of coverage

under the Policies.  (Doc. 41.)

**STANDARD**

A party is entitled to summary judgment if it can demonstrate that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted where

the documentary evidence produced by the parties permits only one conclusion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

**ANALYSIS**

Usually, a duty-to-defend case focuses solely on whether the complaint in

the underlying litigation sets forth sufficient facts to invoke coverage under an

insurance policy.  *See United Natl. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214

P.3d 1260, 1269 (Mont. 2009).  Here, however, Colony and National Union

dispute that they are insurers of WBI in the first instance.  Therefore, before

reaching whether Colony and National Union have a duty to defend WBI in the

underlying lawsuit, WBI must first establish that it is insured under the Colony

and National Union Policies.  *Travelers Cas. & Sur. Co. v. Ribi Immunochem

Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005) ("We agree with those courts that

have allocated the initial burden to the insured to establish that the claim falls

within the basic scope of coverage and shifted to the insurer the burden to

-4-

establish that the claim specifically is excluded.").

## I.     Additional Insured Status

This threshold issue depends on the terms of the Colony and National Union Policies and the Construction Agreement. "The construction and interpretation of a contract is a question of law for [a c]ourt to decide." *In re Estate of Burrell*, 245 P.3d 1106, 1111 (Mont. 2010) (internal quotation marks omitted). "When the language of a contract is clear and unambiguous, the language controls, and there is nothing to construe or interpret." *Id.* Likewise, "[t]he interpretation of an insurance contract is a question of law." *United Natl. Ins. Co.*, 214 P.3d at 1265. "[W]hen the language of a policy is clear and explicit, the policy should be enforced as written." *Id.* "When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011). Policies are to be construed "strictly against the insurer and in favor of the insured." *Id.*

### A.     Colony Policy

WBI argues it is insured by Colony because it is an "additional insured" as defined by the Colony Policy. (Doc. 70 at 8–22.) The Policy provides in its Commercial General Liability Coverage Form under Section I - Coverages:

[Colony] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Colony] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Colony] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 63-3 at 13.)

The Policy provides under Section II - Who Is An Insured, that the entity "designated in the Declarations" is an insured, (*id.* at 20), and in the Declarations, the Policy designates Pro Pipe as the "Named Insured," (*id.* at 1). As for any additional insureds, the Policy includes a blanket additional insured endorsement, which provides that "Additional Insured Organization(s)" are "all persons or organizations as required by written contract with the named insured." (*Id.* at 30.)

Pro Pipe furnished WBI with a Certificate of Liability Insurance ("the Certificate"), which identified Pro Pipe as the "Insured," Colony and National Union as the "Insurers Affording Coverage," and WBI as the "Certificate Holder." (Docs. 71-2 at 64; 63-4 at 1.) The Certificate shows the details of coverage for each policy provided by Colony and National Union. A box labeled "ADD'L INSRD" is marked with an "X" next to the Colony Policy. (Doc. 63-4 at 1.) A box labeled "Description of . . . Exclusions Added by Endorsement/Special Provisions" provides, "Certificate holder is additional insured with respect to

contracts with them." (*Id.*)

WBI insists it is an "additional insured" on the Colony Policy because it is an organization required to be an additional insured by written contract with Pro Pipe. WBI is correct because the Construction Agreement required that WBI be named as an additional insured on Pro Pipe's insurance policies. Section XXI on Insurance in the Construction Agreement provides:

> [Pro Pipe] . . . shall maintain with reliable insurance companies . . . minimum insurance coverage[] in accordance with requirements set forth in Insurance Form 21160, attached hereto as Exhibit "B" and made a part hereof, to protect [WBI] against liability for damage, loss, or expense arising from damage to property or injury or death of any person or persons arising in any way out of, in connection with, or resulting from the work or construction provided for [under the Construction Agreement].

(Doc. 71-1 at 16.) Pro Pipe's Project Manager declared that he "understood that . . . the Construction Agreement required [Pro Pipe] to name [WBI] as an additional insured on [Pro Pipe's] liability insurance policies. To comply with the Construction Agreement, [Pro Pipe] asked its insurance agent . . . to procure appropriate Certificates of Liability Insurance. . . . and [he] sent those Certificates to [WBI]." (Marsh Decl., Doc. 90-1 at 2.) WBI received the Certificate from Pro Pipe and incorporated it into the Construction Agreement. (Docs. 71-1 at 21; Seifert Aff., Doc. 71-2 at 3, 29, 64.)

Colony argues that the insurance provision of the Construction Agreement is ambiguous, and therefore unenforceable, because it does not specify the minimum insurance coverage Pro Pipe was to obtain and references Insurance Form 21160, which WBI failed to attach to the Construction Agreement. (Doc. 61 at 19–21.) Colony's argument is without merit. No ambiguity exists because the provision, "as a whole, is [not] reasonably subject to different interpretations." *Burrell*, 245 P.3d at 1111. The common sense meaning of the insurance provision is Pro Pipe's obligation to maintain insurance coverage to protect WBI against liability for damages arising out of the Project, regardless of the minimum coverage required by Form 21160. According to the provision, Pro Pipe was required to "furnish a certificate of insurance to [WBI] prior to commencement of [the Construction Agreement]." (Doc. 71-1 at 16.) Pro Pipe furnished WBI with the Certificate, which set out the limits of the Colony and National Union Policies, and the parties subsequently commenced work on the Project. WBI's failure to attach Form 21160 did not invalidate Pro Pipe's insurance obligation.

Colony disputes that the Construction Agreement required Pro Pipe to name WBI as an additional insured. (Docs. 76 at 4; 80 at 4.) Colony insists that the Agreement required Pro Pipe to procure insurance coverage for WBI with respect to liability for Pro Pipe's negligence—not WBI's own negligence. Regardless, the

Construction Agreement obligates Pro Pipe to procure insurance coverage to protect WBI against liability for damages for the injury of any person "arising in any way out of, in connection with, or resulting from the work or construction provided [by Pro Pipe]." (Doc. 71-1 at 16.) Colony asks the Court to create a limitation on the provision, but the language is "clear and unambiguous." *Burrell*, 245 P.3d at 1111. The provision does not require negligence on the part of any particular party. WBI is an additional insured under the Colony Policy.

### B. National Union Policy

WBI argues it is insured by National Union because it is also an "additional insured" under the National Union Policy. (Doc. 89 at 5–7, 17–20.) The Policy is a commercial umbrella liability policy. (National Union Policy, Doc. 78-4.) It contains a commercial general liability limitation endorsement, which excludes commercial general liability coverage *unless* "Commercial General Liability is provided by a policy listed in Scheduled Underlying Insurance." (*Id.* at 33.) The exclusion further states:

> Coverage under this policy will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

(*Id.*)  The Policy covers entities qualifying as an "insured," which includes "[a]ny person or organization, other than [Pro Pipe], included as an additional insured in the policies listed in Scheduled Underlying Insurance, however . . . coverage will not be broader than is available to such person or organization under such Scheduled Underlying Insurance." (*Id.* at 37.)  Because the National Union Policy is an umbrella policy, the underlying insurance must respond first, and the National Union Policy responds upon exhaustion of the underlying policy.  (*Id.* at 7–11.)

Based on these provisions of the National Union Policy, WBI is insured by National Union.  The Colony Policy is listed in the Schedule of Underlying Insurance in the National Union Policy.  (*Id.* at 3.)  The National Union Policy follows the terms of the underlying Colony Policy.  Because WBI is an additional insured under the Colony Policy, it is also an additional insured under the National Union Policy.

National Union insists WBI cannot qualify as an additional insured under the Colony Policy because Pro Pipe was not required to name WBI as an additional insured, (Doc. 78 at 18), where the Construction Agreement required only that Pro Pipe "maintain . . . minimum insurance coverage[] . . . *to protect* [WBI] against liability in connection with Pro Pipe's work," (Doc. 71-1 at 16).

National Union avers that "[a]n agreement to maintain insurance that will *protect* an entity is not an agreement to name that entity as an additional insured under an insurance policy." (Doc. 78 at 18.) National Union relies on *RCS Group, Inc. v. Lamonica Constr. Co.*, 916 N.E.2d 381 (Mass. App. Ct. 2009). There the subcontract insurance provision required the subcontractor to maintain insurance "as will protect" the contractor without explicitly stating that the contractor be named as an additional insured. *Id.* at 386. The subcontractor did not name the contractor as an additional insured and claimed it had no duty to do so under the terms of the subcontract. *Id.* The court determined the subcontractor did not breach the insurance provision because the subcontract indemnification provision provided sufficient "protection" for the contractor through the liability insurance the subcontractor purchased in its own name. *Id.* at 387.

That case is distinguishable because Pro Pipe *did* add WBI as an additional insured on the Policies, and Pro Pipe does not contest it was required to do so. Indeed, the Construction Agreement does not explicitly state that Pro Pipe must name WBI as an additional insured on its general liability policies, (Doc. 63-2 at 16), which creates some ambiguity. However, even construing the ambiguity against WBI instead of Pro Pipe, the Certificate and the affidavit testimony of both Pro Pipe's Project Manager and WBI's Pipeline Engineering and Integrity

Manager are sufficient to show the intent of the parties to have WBI added as an additional insured, (Docs. 63-4, 90-1, 71-2). *See Scentry Biologicals, Inc. v. Mid-Continent Cas. Co.*, 319 P.3d 1260, 1267 (Mont. 2014) (relying on certificate of insurance and affidavit testimony describing intent of the parties to find existence of agreement for manufacturer to add distributor as additional insured on insurance policy). As strangers to the Construction Agreement, Colony and National Union have no basis to challenge the intent of Pro Pipe and WBI in executing the Agreement. *United Natl. Ins. Co.*, 214 P.3d at 1268 (declaring that "[a]n insurance policy, like any other contract, must be given that interpretation which is reasonable and which is consonant with the manifest object and intent of the parties" (internal quotation marks omitted)). In sum, WBI has established it is insured by both Colony and National Union.[1]

## II.    Duty to Defend

The central issue here is whether Colony and National Union had a duty to

---

[1] Because WBI is an additional insured under the National Union Policy by way of the Colony Policy, the Court need not address WBI's argument that it is an additional insured separately under the Contractors' Limitation Endorsement in the National Union Policy. (Docs. 89 at 17–20; 96 at 3–10.) Additionally, National Union's averment that WBI does not qualify as an additional insured pursuant to Montana's comparative fault statute is without merit. (Doc. 78 at 22–24.) The comparative fault statutes that National Union relies on are "effective upon occurrence of [a] contingency" that has not occurred. *See* Mont. Code Ann. §§ 21–1–702, 703. And National Union fails to cite any authority establishing that comparative fault and joint and several liability statutes may prevent status as an additional insured.

defend WBI in the underlying litigation. "Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts that represent a risk covered by the terms of an insurance policy. And the duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *United Natl. Ins. Co.*, 214 P.3d at 1269 (internal citations omitted). "Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend. And any doubt as to the existence of a duty to defend must be resolved in the insured's favor." *Id.* (internal citations omitted).

### A. Colony

Colony insists it does not have a duty to defend WBI in the underlying litigation because Shanks's claim against WBI unequivocally does not fall within the Policy coverage. The cornerstone of Colony's argument is its assertion that Shanks's complaint does not allege that WBI is vicariously liable for any actions of Pro Pipe or those acting on Pro Pipe's behalf—the complaint only alleges that WBI is liable for its *own* acts or omissions. Therefore, it is Colony's position that because its Policy only covers liability for injuries caused, in whole or in part, by Pro Pipe or those acting on Pro Pipe's behalf, Shanks's claim falls outside the scope of coverage.

### 1.     Additional Insured Endorsement

According to Colony, the Shanks complaint does not contain allegations that fall within the limitation of coverage contained in the additional insured endorsement, but WBI maintains that the endorsement covers the very set of facts set forth in the underlying litigation.  The additional insured endorsement in the Colony Policy limits coverage for an additional insured "to liability for 'bodily injury' . . . caused, in whole or in part, by: 1. [Pro Pipe's] acts or omissions; or 2. [t]he acts or omissions of those acting on [Pro Pipe's] behalf; in the performance of [Pro Pipe's] ongoing operations for the additional insured."  (Doc. 63-3 at 30.)

Shanks's complaint alleges liability for injuries caused, in whole or in part, by the acts or omissions of those acting on Pro Pipe's behalf, specifically Underground Boring.[2]  Underground Boring was a subcontractor to general contractor Pro Pipe, (Doc. 71 at 5), and Shanks's complaint names Underground Boring as a defendant, (Doc. 63-1 at 1).  The complaint alleges that both WBI and Underground Boring owed and breached their duties to Shanks, were negligent *per se*, and may have acted with actual malice.  (*Id.* at 8–12.)  The complaint seeks

_____

[2] Because the Court finds that Shanks's allegations against Underground Boring are sufficient to bring the claim within the scope of the endorsement, it is unnecessary to address WBI's argument that the acts and omissions of Shanks himself, while acting on behalf of Pro Pipe, bring the claim within the scope of the endorsement.  (Docs. 70 at 12–15; 76 at 8–9.)

judgment against and damages from WBI and Underground Boring.  (*Id.* at 12.)
Specifically, Shanks claims that Underground Boring failed to obtain pipeline
locates in the area of the pit where Shanks later operated the backhoe and that
WBI employees had knowledge of Underground Boring's failure yet allowed the
Project to continue.[3]  (WBI St. of Disputed Facts, Doc. 72 at 2–4.)

To support its position that the endorsement precludes coverage for the
defense of WBI because the underlying lawsuit involves WBI's own alleged
negligence, Colony relies on *Plum Creek Marketing, Inc. v. American Economy
Insurance Co.*, 214 P.3d 1238 (Mont. 2009).  (Doc. 61 at 18–19).  In that case, the
additional insured endorsement provided that the additional insured "is an insured
only to the extent [the named insured is] *held liable* due to" work performed by the
named insured or for the named insured.  *Plum Creek Mktg., Inc.*, 214 P.3d at
1241–42 (emphasis added).  The Court concluded, "under the facts of [that] case,"
that the insurer did not owe a duty to defend the additional insured because the

---

[3] Shanks's theories of liability against WBI were developed through discovery in the underlying lawsuit, and Colony cannot ignore this information when assessing whether it has a duty to defend.  *See Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 928 (Mont. 2009) ("An insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint—which is, after all, drafted by a claimant over whose draftsmanship the insured has no control—does not allege these facts of which the insurer has knowledge."); *Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794, 798 (D. Mont. 1995) ("an insurer's duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the policy").

underlying complaint only alleged negligence against the additional insured, not the named insured, and therefore the named insured could not be "held liable." *Id.* at 1247. However, that case is distinguishable because the endorsement here does not limit coverage to the extent that Pro Pipe is held liable. Instead, the endorsement limits coverage with respect to liability for bodily injury caused, in whole or in part, by Pro Pipe's acts or omissions or the acts or omissions of those acting on Pro Pipe's behalf. (Doc. 63-3 at 30.)

Colony's position that its endorsement does not cover the factual scenario here that multiple parties, including the additional insured, may have contributed to Shanks's injuries creates an ambiguity in its own Policy. There is a legal notion that any ambiguity be construed against Colony, *Steadele*, 260 P.3d at 149, so the Colony interpretation has no support in the law. The background of the endorsement supports the conclusion that it does not restrict coverage solely to WBI's vicarious liability for the acts or omissions of Pro Pipe. According to WBI, the endorsement in the Colony Policy is a form endorsement published by the Insurance Services Office, Inc., specifically form CG 20 10. (Doc. 84; Internal Risk Management Article, Doc. 84-1.) The endorsement as published provides that "caused, in whole or in part, by" means that the "acts or omissions of the additional insured can be a *concurrent* or *contributing* cause of the injury or

damage, but a direct causal link to the named insured must be made." (*Id.* at 2.) In other words, "[n]ot only must the *additional* insured not be the sole cause of injury or damage, but the *named* insured must be at least a partial cause." (*Id.*) This interpretation of the endorsement is supported by case law. *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242, 257 (D. Me. 2011) (CG 20 10 provides coverage for "occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured")*; see also Plum Creek Mktg., Inc.*, 214 P.3d at 1241 n. 1 (CG 20 10 "is often requested by additional insureds because courts have interpreted it to provide coverage for claims based upon the additional insured's own negligence").

Because Shanks alleged that the acts or omissions of Underground Boring, an entity acting on behalf of Pro Pipe, was at least a partial cause of his injuries and that WBI was a contributing cause—but not the sole cause—of his injuries, the additional insured endorsement in the Colony Policy does not preclude coverage.

### 2.     Insured Contract

Alternatively, Colony insists coverage of WBI for Shanks's claim is precluded under the contractual liability exclusion of its Policy. (Doc. 61 at 10–14.) That exclusion states, "This insurance does not apply to . . . '[b]odily

injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Doc. 63-3 at 14.) The exclusion goes on to state, however, "[t]his exclusion does not apply to liability for damages . . . [a]ssumed in a contract or agreement that is an 'insured contract.'" (*Id.*) The parties have briefed at length whether or not the Construction Agreement's indemnification provision renders it an "insured contract" as defined by the Policy. Yet, as WBI correctly highlights, (Doc. 84 at 12–13), the contractual liability exclusion pertains to claims for contractual indemnity and is independent of Colony's duty to defend WBI as an additional insured. *See United Natl. Ins. Co.*, 214 P.3d at 1268 (determining whether the insurance policy provided coverage "in its own right" after concluding the indemnity provision of the underlying contract did not provide indemnification).

Nevertheless, the Construction Agreement is an insured contract. The Colony Policy defines "insured contract" as:

> That part of any other contract or agreement pertaining to [Pro Pipe's] business . . . under which [Pro Pipe] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by [Pro Pipe] or by those acting on [Pro Pipe's] behalf.

(Doc. 63-3 at 32.) The Construction Agreement's indemnification provision

provides:

> [Pro Pipe] . . . shall and agrees to indemnify, protect and hold [WBI] harmless from and against any and all loss, damage and expense, including judgments, costs and attorney's fees by reason of any and all accidents, injuries . . . and/or damages whatsoever, to the person or property of any and all persons . . . or by reason of claims of any and every character, in any manner connected with said work or undertaking or acts or omissions of [Pro Pipe], or any subcontractor hereunder.

(Doc. 63-2 at 12.)  The common sense meaning of these provisions is clear.  The Construction Agreement is an "insured contract" because the Construction Agreement pertains to Pro Pipe's business, Pro Pipe assumed the tort liability of WBI to pay for bodily injury to a third person, and Shanks's injuries were allegedly caused, in whole or in part, by Underground Boring while acting on Pro Pipe's behalf.

Relying on *United National Insurance Co.* and *Slater v. Central Plumbing & Heating Co.*, 912 P.2d 780 (Mont. 1996), Colony insists the Construction Agreement is not an "insured contract" because the indemnification provision does not require indemnity for WBI's own negligence.  However, not only are those cases distinguishable because there the injured employees did not allege that the subcontractor or the sub-subcontractor were negligent, those cases do not discuss insured contract status.  Here, the indemnity provision is clear in that it holds WBI harmless from "any damage . . by reason of *any and all accidents . . . in any*

*manner connected with* said work . . . of [Pro Pipe], or any subcontractor." (Doc.

63-2 at 12 (emphasis added).) Although broad, this indemnification provision

comes within the definition of insured contract, which requires assumption of tort

liability, "provided the 'bodily injury' . . . is caused, in whole or in part, by [Pro

Pipe] or by those acting on [Pro Pipe's] behalf." (Doc. 63-3 at 32.) As established

above, Shanks alleged that his injuries were caused in part by Underground Boring

and in part—not solely—by WBI. Therefore, the contractual liability exclusion

does not defeat Colony's duty to defend.[4]

In sum, the additional insured endorsement covers Shanks's claim against

WBI, and the contractual liability exclusion does not preclude coverage. Colony

has a duty to defend WBI where Shanks's claim was potentially within the Colony

Policy coverage.

### B.    National Union

Like Colony, National Union insists that although "[v]icarious liability

---

[4] The Court rejects Colony's additional argument that coverage is precluded by "the exclusivity provisions of Montana's Workers' Compensation Act, § 39–71–411," (Doc. 61 at 15), because "nothing in [Montana Code Annotated] § 39–71–411 precludes [a party] from being covered, as an additional insured, under [an employer's] policy." *Liberty Mut. Ins. Co. v. Contl. Resources, Inc.*, 2011 WL 2982221, at *7 (D. Mont. Apr. 25, 2011), *adopted by*, *Liberty Mut. Ins. Co. v. Contl. Resources, Inc.*, 2011 WL 3024326 (D. Mont. July 21, 2011), *affirmed by*, *Liberty Mut. Ins. Co. v. Contl. Resources, Inc.*, 501 Fed. Appx. 626 (9th Cir. 2012) (unpublished). *See also Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, 2010 WL 4909600, at *6 n. 6 (E.D. Pa. Nov. 30, 2010) (noting the interplay between the additional insured endorsement and workers' compensation laws in third-party over actions).

imputed to the putative additional insured for the conduct of the named insured falls within the scope of additional insured coverage . . . liability caused by the putative insured's own negligent conduct is not covered." (Doc. 78 at 20.) National Union relies on three cases to support its position that the additional insured endorsement does not provide coverage to WBI, but all three cases are either distinguishable or inapposite. *Lincoln Gen. Ins. Co. v. Fed. Constr., Inc.*, 2010 WL 4978852, at *2 (N.D. Ill. Dec. 2, 2010) (distinguishable; complaint did not name the named insured in the same count as additional insured, such that named insured could not have caused, in whole or in part, damages attributed to additional insured); *Engg. & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 707 (Minn. 2013) (inapposite; additional insured endorsement does not contain "caused, in whole or in part, by" language); *Evraz Claymont Steel v. Harleysville Mut. Ins. Co.*, 2011 WL 6000780, at *3 (Del. Super. Ct. Nov. 30, 2011) (distinguishable; allegations in complaint directed solely at additional insured, such that named insured could not have caused, in whole or in part, damages attributed to additional insured).

National Union also relies on *Dale Corp. v. Cumberland Mut. Fire Ins. Co.*, 2010 WL 4909600, at *5 (E.D. Pa. Nov. 30, 2010), to support its proposition that "[i]t is insufficient to merely show that WBI's liability 'arises out' of Pro Pipe's

conduct.  The 'caused by' language in the Colony Policy is 'narrower than phrases like 'arising out of,' which commonly appeared in additional insured endorsements prior to 2004."  (Doc. 78 at 21.)  The *Dale Corp.* case supports WBI's position that the CG 20 10 endorsement "'exclude[s] injury or damage arising out of the sole negligence of the additional insured'" and "require[s] 'some causation on the part of the named insured to trigger coverage under the additional insured endorsement.'"  2010 WL 4909600, at **5–6 (quoting Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner and O'Connor on Construction Law* vol. 4, §§ 11:151, 11:167 (2010)).

Again, both requirements of the endorsement are met here where Shanks alleges the acts and omissions of Underground Boring caused, at least in part, his injuries, and Shanks does not allege the acts and omissions of WBI were the sole cause.  Like Colony, National Union would have the Court read into the Policy a vicarious liability limitation, which is not justified.  *United Natl. Ins. Co.*, 214 P.3d at 1265 ("when the language of a policy is clear and explicit, the policy should be enforced as written"); *see also Thunder Basin Coal Co., L.L.C. v. Zurich Am. Ins. Co.*, 943 F. Supp. 2d 1010, 1014 (E.D. Mo. 2013) (interpreting identical endorsement and concluding "the plain language unambiguously does not limit coverage to situations involving vicarious liability").

Ultimately, National Union concedes that where Colony owes a duty to defend, it too owes a duty to defend. But National Union argues "it does not owe WBI a current duty to defend in the underlying lawsuit, unless and until the Colony Policy's limits are fully exhausted." (Doc. 78 at 25.) The National Union Policy provides: "We will have the right and duty to defend any Suit against the Insured that seeks damages . . . covered by this policy . . . when . . . the total applicable limits of Scheduled Underlying Insurance have been exhausted . . . ." (Doc. 78-4 at 8.) Such a position is not without risk. A determination on the allocation of defense costs between Colony and National Union is reserved until further briefing on this issue and further notification of the status of the underlying lawsuit. *See Guaranty Natl. Ins. Co. v. Am. Motorists Ins. Co.*, 758 F. Supp. 1394, 1396, 1397 n. 4 (D. Mont. 1991) ("allocation of defense costs between primary and excess insurers must be considered in light of the particular facts of each case and the various policies involved" and in light of the status of the underlying lawsuit).

## III.    Duty to Indemnify

Because the Court is unaware of any determination of WBI's liability in the underlying lawsuit, resolution of the indemnity obligation of Colony and National Union is premature.

## CONCLUSION

WBI is an additional insured under both the Colony and National Union Policies, and both Colony and National Union have a duty to defend WBI in the underlying lawsuit.

Accordingly, IT IS ORDERED that WBI's Motions for Partial Summary Judgment (Docs. 69, 88) are GRANTED.

IT IS FURTHER ORDERED that Colony's Motion for Summary Judgment (Doc. 60) and National Union's Motion for Summary Judgment (Doc. 77) are DENIED.

IT IS FURTHER ORDERED that pursuant to the Court's Order of September 17, 2013 (Doc. 102; *see also* Doc. 101), the Court will set a scheduling conference to address any unresolved issues.

DATED this 29th day of September, 2014.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT